**JERICHO ALL–WEATHER OPPORTUNITY FUND, LP and Svirsky Asset Management, Inc., Appellants,**

**v.**

**PIER SEVENTEEN MARINA AND YACHT CLUB, LLC and Scott Svirsky, Appellees.**

No. 4D15–2964.

District Court of Appeal of Florida, Fourth District.

Nov. 16, 2016.

James S. Telepman of Cohen, Norris, Wolmer, Ray, Telepman & Cohen, North Palm Beach, for appellants.

Michael J. Ryan and Kelley B. Stewart of Krupnick, Campbell, Malone, Buser, Slama, Hancock, Liberman & McKee, P.A., Fort Lauderdale, for Appellee Pier Seventeen Marina.

Catherine E. Lasky of Jones, Swanson, Huddell & Garrison, L.L.C., New Orleans, LA., pro hac vice, for Appellee Pier Seventeen Marina & Yacht.

Jason W. Burge of Fishman Haygood LLP, New Orleans, LA., pro hac vice, for Appellee Pier Seventeen Marina & Yacht.

TAYLOR, J.

This lawsuit has its genesis in a lender's failure to fund a $36 million construction loan in 2008. The lender, Jericho All–Weather Opportunity Fund ("Jericho"), and its general partner, Svirsky Asset Management ("SAM"), appeal a final judgment awarding Pier Seventeen Marina and Yacht Club ("Pier 17") damages of $5,158,875.63, plus $2,213,687.58 in prejudgment interest, in Pier 17's action for breach of a Loan Agreement. We conclude that, because the Loan Agreement did not contain a promise by Jericho to fund the loan, Jericho's failure to fund the loan was not a breach of the Loan Agreement. Jericho's failure to fund the loan was a breach of a loan commitment letter, but that was not the agreement Pier 17 sued upon. We therefore reverse the final judgment.

In June 2006, Pier 17 purchased waterfront property in Fort Lauderdale with the intention of developing a dockominium[1] and yacht club. The project was to include 26 covered boat slips, which would be for sale and would accommodate megayachts. The project was also to include four rental slips.

Regions Bank approved a loan to Pier 17 to finance the acquisition of the property and the development of the project, but a portion of that loan was contingent upon

---

1. A dockominium is the water-based version of a condominium, allowing a buyer to purchase a boat slip with the right to use the common elements of the marina.

Pier 17 obtaining a certain number of pre-sales of the boat slips. Pier 17 failed to satisfy this pre-sales requirement.

Consequently, Pier 17 began looking for other lenders to finance the construction of the project. By late 2007, Pier 17 began discussions with Jericho regarding the possibility of Jericho providing a loan to Pier 17.

In January 2008, Jericho and Pier 17 executed a First Commitment Letter, documenting the parties' agreement that Jericho would make a $23 million loan to Pier 17. As required by the terms of the First Commitment Letter, Pier 17 paid Jericho a commitment fee of $230,000. Pier 17 and Jericho later negotiated further and reached a new agreement to increase the amount of the loan.

In March 2008, the parties executed a Second Commitment Letter, documenting the parties' agreement that Jericho would make a $36 million loan to Pier 17 for a term of 18 months at 14% interest. Under the terms of the Second Commitment Letter, Jericho retained the original $230,000 commitment fee and Pier 17 paid Jericho an additional commitment fee of $130,000. The Second Commitment Letter also terminated the First Commitment Letter. Finally, the Second Commitment Letter contained a mutual waiver of consequential damages.

Later that month, Earl Weber, as Manager of Pier 17, and Scott Svirsky, on behalf of Jericho and SAM (a general partner of Jericho), executed a Loan Agreement and various other loan documents, including a promissory note, in anticipation of the closing of the loan.

The Loan Agreement stated that "[Pier 17] has negotiated with [Jericho] for a loan ("Loan") in the principal amount of Thirty Six Million and No/100 ($36,000,000.00) Dollars" and that Pier 17 would use the loan proceeds for the purpose of refinanc-ing the property and constructing the project.

On April 1, 2008, the scheduled closing date, Jericho failed to fund the loan. Pier 17 was unable to obtain alternate financing. Without Jericho's loan, Pier 17 could not begin construction on the project. The dockominium was never built, Pier 17 defaulted on the Regions loan, and Regions obtained a $1 million deficiency judgment against Pier 17.

Pier 17 filed the instant lawsuit in November 2010. In the operative complaint, Pier 17 brought a claim against Jericho and SAM (collectively the "defendants") for breach of the Loan Agreement. Pier 17 alleged that "Jericho was obligated under the Loan Documents, specifically the Loan Agreement, to lend Pier 17 $36,000,000.00," and that Jericho's failure to fund the loan constituted a material breach. Notably, Pier 17 did not sue for breach of the Second Commitment Letter.

During the litigation, Jericho and SAM took the position that the Loan Agreement was not "an enforceable contract, since the loan contemplated thereunder never came to fruition."

Following a six-day bench trial, the trial court entered a final judgment in favor of Pier 17. The trial court awarded Pier 17 damages of $5,158,875.63 for breach of the Loan Agreement, including $4.1 million in lost profits, $1 million to satisfy the Regions deficiency judgment, and $58,875.63 for fees and costs incurred during the deficiency proceedings. The trial court also awarded $2,213,687.58 in prejudgment interest. Jericho and SAM appealed the final judgment.

On appeal, the defendants first argue that the Loan Agreement never became an enforceable contract and that, in any event, the Loan Agreement did not impose

any obligation on them to fund the loan. We agree.

▬▬ Whether an agreement constitutes a valid contract is a question of law subject to a de novo standard of review. *Richardson v. Knight,* 197 So.3d 143, 144 (Fla. 4th DCA 2016). Likewise, a trial court's interpretation of a contract is generally subject to a de novo standard of review.[2] *N. Star Beauty Salon, Inc. v. Artzt,* 821 So.2d 356, 358 (Fla. 4th DCA 2002).

▬▬ The basic elements of an enforceable contract are offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla.2004); *W. Const., Inc. v. Fla. Blacktop, Inc.,* 88 So.3d 301, 304 (Fla. 4th DCA 2012).

▬▬ A "loan commitment" is "[a] lender's binding promise to a borrower to lend a specified amount of money at a certain interest rate, usu[ally] within a specified period and for a specified purpose (such as buying real estate)." *Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So.2d 665, 673–74 (Ala.2001) (quoting *Black's Law Dictionary* at 948 (7th ed.1999)).

▬▬ The issue in this case is not whether Jericho agreed to loan $36 million to Pier 17. Jericho clearly did. The real issue is whether Jericho's obligation to fund the loan arose under the Loan Agreement or instead arose under the Second Commitment Letter.

Notably, the Loan Agreement—and other loan documents such as the promissory note—were contingent upon the loan actually closing. Indeed, the Loan Agreement presupposes that the loan has already been made. The Recitals section of the Loan Agreement makes this clear:

*RECITALS:*

A. Borrower has negotiated with Lender for a loan ("Loan") in the principal amount of Thirty Six Million and No/100 ($36,000,000.00) Dollars to be used by Borrower for the purpose of refinancing on the property....

B. Borrower and Lender wish to enter into this Agreement in order to set forth (among other things) the terms and conditions of said Loan.

NOW, THEREFORE, *in consideration of the Loan* and the sum of Ten and No/100 Dollars ($10.00) *each to the other in hand paid, the receipt and sufficiency of which is hereby acknowledged,* and the other terms and conditions set forth hereafter, Borrower and Lender ... agree as follows....

(emphasis added).

Here, the Loan Agreement states that it is "in consideration of" the loan, but also states that the loan has been paid and that its receipt is acknowledged. In fact, the Loan Agreement itself primarily consists of representations, warranties, and covenants of the borrower, as well as the lender's remedies in the event of default. Thus, the Loan Agreement did not become a valid contract until Jericho paid the $36 million loan as consideration.

In any case, regardless of whether the Loan Agreement ever became a valid contract, the Loan Agreement does not contain a promise by Jericho to fund the loan. The Loan Agreement did not impose any obligation on Jericho to fund the loan, but instead defined the obligations of the parties during the term of the loan. The obligation to fund the loan arose under the Second Commitment Letter, which clearly contained all the elements of a binding contract. However, Pier 17 did not sue for

---

**2.** Even if we were to apply a more deferential standard of review, we would conclude that

the trial court's finding of a breach of the Loan Agreement was clearly erroneous.

942

breach of the Second Commitment Letter—perhaps because the Second Commitment Letter would have barred Pier 17 from obtaining consequential damages.

In short, because the Loan Agreement did not contain a promise by Jericho to fund the loan, Jericho's failure to fund the loan was not a breach of the Loan Agreement. The failure to fund the loan was a breach of the Second Commitment Letter, which was not the agreement Pier 17 sued upon. Our conclusion that the defendants did not breach the Loan Agreement renders the remaining issues moot.

For the foregoing reasons, we reverse the final judgment and remand for entry of judgment in favor of the defendants.

*Reversed and Remanded.*

GROSS and DAMOORGIAN, JJ., concur.