[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17802
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-23989-UU

GEORGE DAGNESSES,
an individual,

Plaintiff - Appellant,

versus

TARGET MEDIA PARTNERS,
a foreign corporation,
TARGET MEDIA PARTNERS OPERATING COMPANY,
a foreign corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 29, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

George Dagnesses believed his boss had it out for him. She belittled and accosted him, he felt, and regularly made negative remarks about men. When his boss eventually fired him, Dagnesses sued his former employer, Target Media Partners and Target Media Partners Operating Company (collectively, "TMP"), for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, bringing various state law claims as well. The district court granted TMP summary judgment on all counts. Upon review, we reverse as to Dagnesses' Florida law contract claim, and otherwise affirm.

## I.    FACTUAL BACKGROUND

Dagnesses asserts that while working as a manager at TMP, he was subject to discriminatory treatment by his supervisor, Linda Coffman, including discharge without a warning or opportunity to correct his allegedly unsatisfactory behavior and performance. He also asserts that TMP retaliated against him for speaking out against his allegedly discriminatory treatment and against certain practices regarding the classification and work assignments of independent contractors, and that it failed to pay him commissions and bonuses to which he was contractually entitled. TMP asserts that it discharged Dagnesses due to his behavioral and work performance problems and denies that it retaliated against him or agreed to pay him commissions and bonuses.

Sabina Padva, a TMP general manager, hired Dagnesses in 2008 as a Dade County sales manager for one of TMP's publications, *Car and Truck Buyers Guide*. Dagnesses' offer of employment letter from TMP read, in part: "[Y]our employment with Target Media Partners is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time." Doc. 126-2 at 10.[1] The offer letter also provided that Dagnesses would receive a 10% commission based on his weekly personal sales, as well as a bonus for increasing TMP's monthly sales in Dade County. Padva was Dagnesses' direct supervisor until 2013, when Coffman, TMP's regional Vice President of Operations, promoted Dagnesses to a general manager position for another TMP publication, *Auto Guide*. In this position, Dagnesses reported directly to Coffman.

Dagnesses testified that during his time working at the *Auto Guide*, Coffman regularly treated him poorly due to her dislike of men. According to Dagnesses, Coffman repeatedly belittled and second-guessed him, and on one occasion she poked him in the chest. Dagnesses testified that Padva had told him Coffman did not like men, and that Coffman disliked Dagnesses in particular. He also testified that Coffman indicated to him that she wanted him to hire women.

Padva testified that Coffman's treatment of Dagnesses had made her uncomfortable, but she did not believe Coffman disliked Dagnesses because he

---

[1] Unless otherwise noted, all citations to "Doc. __" refer to the numbered entries on the district court docket.

was a man. Ligia Obeso, Dagnesses' co-worker at *Auto Guide*, testified that Coffman behaved unpleasantly toward Dagnesses, that Padva had said Coffman hated men, and that Coffman once said TMP should hire more female sales representatives because women are better workers than men. Another co-worker, Rafael Lugo, testified that Coffman behaved differently around Dagnesses than around female co-workers and seemed uncomfortable in Dagnesses' presence. Rosangel Duarte, a physician who treated Dagnesses for cancer, testified that Coffman once called his office to confirm that Dagnesses was not lying about his medical condition. Dagnesses claimed that Coffman required him to use sick time rather than vacation time to undergo surgery—something no other employee had to do—and never called a doctor to verify another employee's medical condition.

Coffman testified that *Auto Guide* lost money under Dagnesses' management and that she repeatedly told Dagnesses that his job performance was unsatisfactory. Coffman warned Dagnesses that he had failed to meet TMP's sales goals and asked him to identify specific actions he could undertake to increase sales. She also reprimanded him for unilaterally and without prior authorization terminating one employee and asking another employee to resign, offered him advice on improving sales and directed him to ask Padva for help, and warned him that he needed to communicate better. Coffman testified that TMP did not provide improvement plans to general managers with performance problems, but brought

4

unsatisfactory behavior to their attention so that they would correct it. Dagnesses acknowledged that Coffman was unhappy with his job performance and that he had declined Coffman's offer of advice and direction. He also acknowledged sending Coffman a frustrated email in response to her criticism, and that the email's tone was inappropriate.

Dagnesses testified that he had met the sales benchmarks set out in the offer letter during his first two and a half years at TMP, but did not receive the commissions and bonuses the letter had promised him. Although TMP paid him $12,000 in commissions, Dagnesses said, it later told him that it had overpaid him by $8,000 and demanded that money back. Dagnesses asserted that he paid the money back under protest and that TMP still owes him $16,500. Eventually, TMP formally altered Dagnesses' compensation plan so that he would no longer receive commissions based on personal sales, although he remained eligible for bonuses based on regional sales.

Dagnesses also testified that while employed with TMP, he told Coffman that he believed the company had improperly classified as independent contractors persons who should have been classified as employees and was assigning them work that independent contractors legally could not perform. He conceded, however, that he never informed Coffman that he believed TMP was engaged in illegal activity.

5

TMP fired Dagnesses in 2014.  Coffman told him that TMP was moving in a direction for which he would not be a good fit.  Coffman testified that Dagnesses' job performance and communication problems factored into her decision to terminate him.  Dagnesses testified that he believed Coffman fired him because he was a man, asserting that his performance did not warrant termination.

Dagnesses sued TMP in the district court.  His second amended complaint raised claims of sex discrimination and retaliation under Title VII, as well as claims under the Florida Whistleblower Act ("FWA"), Fla. Stat. § 448.102, and for breach of contract.[2]  The district court granted TMP summary judgment as to each claim.  Dagnesses timely appealed.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We review the district court's grant of summary judgment *de novo*, drawing all inferences in [the non-movant's] favor."  *Robinson v. Arrugueta*, 415 F.3d 1252, 1254-55 (11th Cir. 2005).

---

[2] Dagnesses also brought claims for race discrimination under Title VII and for race and sex discrimination under the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.*  On appeal, he does not challenge the district court's summary judgment on these claims, and so has abandoned them.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## III.    ANALYSIS

### A.    Dagnesses' Title VII Sex Discrimination Claim

Dagnesses argues that the district court erred in granting summary judgment to TMP on his Title VII sex discrimination claim, asserting that TMP discriminated against him by failing to warn or allow him to correct his job performance before firing him.  He has not shown, however, that TMP treated him differently than it treated any similarly-situated female employee, and so he cannot make out a prima facie case of discrimination.  Accordingly, the district court properly granted summary judgment to TMP.

Title VII prevents employers from discriminating against employees on the basis of their sex.  42 U.S.C. § 2000e-2.  We analyze Title VII claims that are based on circumstantial evidence under *McDonnell Douglas Corp. v. Green*'s burden-shifting framework.  *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination.  *Id.*  He satisfies this burden by showing that "1) [he] was a member of a protected class, 2) []he was qualified to do the job, 3) []he was subjected to an adverse employment action, and 4) similarly situated employees outside of the protected class were treated differently."  *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).

7

"To make a comparison of the plaintiff's treatment to that of [employees outside the protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "[T]o determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotation marks omitted). "When making that determination, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (alteration and internal quotation marks omitted).

Once the plaintiff establishes a prima facie case of discrimination, "the burden of production shifts to the employer . . . to introduce evidence of some legitimate, nondiscriminatory reason for its employment decision." *Kidd*, 731 F.3d at 1202 (internal quotation marks omitted). Should the employer make such a showing, the plaintiff "must then show that the seemingly legitimate reason the employer gave was pretextual—i.e., the proffered reason was not the true reason for the employment decision." *Id.* (internal quotation marks omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally

8

discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

It is undisputed that Dagnesses is a member of a protected class, was qualified to do his job, and suffered an adverse employment action. To show that TMP treated similarly-situated female employees more favorably than it treated him, he identified two supposed comparators: Shannon Holman and Gail Chablis, both former TMP general managers terminated for poor work performance, whom Dagnesses asserts received warnings and opportunities to improve their performance before being discharged. Viewing the evidence in the light most favorable to Dagnesses, TMP's treatment of Holman and Chablis does not show that it discriminated against Dagnesses.

Holman is not a valid comparator because her supposed misconduct was not "nearly identical" to Dagnesses'. *Burke-Fowler*, 447 F.3d at 1323. Holman's performance improvement plan, which Dagnesses has not rebutted, shows that she was discharged due to dissatisfaction with the quality of her work, not due to poor communication, attitude, or failure to follow company policy. In contrast, TMP identified insubordination, inappropriate communication, failure to follow instructions, and poor attitude as reasons for discharging Dagnesses. Holman thus engaged in a lesser degree of misconduct than did Dagnesses.

9

Assuming that Chablis is a valid comparator, Dagnesses fails to show that TMP treated her more favorably than him.  He notes that TMP gave Chablis warnings and an opportunity to improve her job performance before terminating her.  The undisputed evidence, however, showed that TMP gave Dagnesses similar warnings and opportunities to correct his allegedly dissatisfactory conduct before firing him.  For example, Coffman offered to advise and direct him to help him improve his performance.  Although Coffman warned Chablis that she was at risk of losing her job but did not do the same for Dagnesses, Coffman's undisputed testimony established that Chablis had asked Coffman whether her job was in jeopardy.  Dagnesses does not contend that he ever asked anyone at TMP whether he was at risk of termination.  Dagnesses also asserts that TMP offered Chablis a new position after firing her, but Coffman's undisputed testimony proved that TMP did not offer Chablis another position.  Chablis, even if a valid comparator, does not help Dagnesses establish a prima facie case.

Dagnesses also argues that even if he cannot produce a valid comparator, he should still survive summary judgment because he has "present[ed] circumstantial evidence that creates a triable issue concerning [TMP's] discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  But he raises this argument on appeal for the first time in his reply brief.  "We decline to address an argument advanced by an appellant for the first time in a reply brief."

10

*Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008). "Letting [Dagnesses] put forward [his] arguments . . . for the first time in the reply brief would deprive [TMP] of the opportunity to reflect upon and respond in writing to [Dagnesses'] arguments and would deprive this Court of the benefit of written arguments." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1307 (11th Cir. 2012) (internal quotation marks omitted). We therefore do not consider Dagnesses' argument concerning circumstantial evidence.

Because Dagnesses cannot show that TMP treated any similarly-situated female employee more favorably than it treated him, he has failed to establish a prima facie case of employment discrimination. *Holland*, 677 F.3d at 1055. The district court thus did not err in granting summary judgment to TMP on this claim.

## B.    Dagnesses' Title VII Retaliation Claim

Dagnesses argues that the district court also erred in granting TMP summary judgment on his claim of retaliation under Title VII. The district court determined that Dagnesses failed both to establish a prima facie case of retaliation and to show that TMP's reason for firing him was pretextual. On appeal, Dagnesses challenges only the district court's determination that he did not establish a prima facie case. Accordingly, he has abandoned his argument as to pretext. Because Dagnesses' failure to show pretext entitles TMP to summary judgment as to his retaliation claim, the district court did not err.

11

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a).  As with sex discrimination claims, "[t]he burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell Douglas*."  *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).  First, the plaintiff must establish a prima facie case of retaliation by proving "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability."  *Id.*  "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct."  *Id.*

"To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect."  *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014).  An appellant who "fails to challenge properly on appeal one of the grounds on which the district court based its judgment . . . is

deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.*

The district court determined that Dagnesses failed to show either a prima facie case of retaliation or that TMP's stated reason for firing him was pretextual. On appeal, Dagnesses argues that the district court erred in determining that he failed to establish a prima facie case of retaliation, but he does not dispute the district court's pretext determination. Dagnesses therefore has abandoned any challenge to that ground. *Id.* Because he failed to show pretext, he cannot prevail on his retaliation claim. The district court thus did not err in granting TMP summary judgment.

## C.    Dagnesses' Florida Whistleblower Act Claim

Dagnesses argues that the district court erred in granting TMP summary judgment on his claim under the FWA. Because he raises this argument on appeal for the first time in his reply brief, we decline to consider it. *Little*, 691 F.3d at 1307. We thus affirm the district court's grant of summary judgment to TMP.

## D.    Dagnesses' Florida Breach of Contract Claim

Finally, Dagnesses argues that the district court erred in granting TMP summary judgment on his Florida law breach of contract claim. According to Dagnesses, TMP failed to pay him $16,500 in commissions and bonuses that he claims were due for his sales performance. The district court determined that

13

Dagnesses had failed to show a triable issue as to whether a contract between him and TMP existed.  This determination was erroneous; we thus reverse and remand for further proceedings.

To show breach of contract under Florida law, a plaintiff "must prove (1) a valid contract; (2) a material breach; and (3) damages." *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. Dist. Ct. App. 2007).  "The basic elements of an enforceable contract are offer, acceptance, consideration, and sufficient specification of essential terms." *Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So. 3d 938, 941 (Fla. Dist. Ct. App. 2016). "What constitutes the essential terms of a given contract differs according to circumstances, but they must include the terms specified in an offer to make a contract." *Knowling v. Manavoglu*, 73 So. 3d 301, 303 (Fla. Dist. Ct. App. 2011) (internal quotation marks omitted).  An "employment contract [that] was terminable at will with an indefinite duration" is nevertheless enforceable, and a plaintiff may sue on it to recover "commissions earned based upon past services performed." *Richey v. Modular Designs, Inc.*, 879 So. 2d 665, 666 (Fla. Dist. Ct. App. 2004).

TMP does not dispute that if the offer letter constituted a valid contract, Dagnesses performed on it and TMP breached it by failing to pay him the commissions and bonuses he claims he is due.  The offer letter allowed a trier of

14

fact reasonably to find that TMP had extended Dagnesses an offer of employment, which he then accepted, commencing his employment with TMP. *See Jericho*, 207 So. 3d at 941. It also supported a finding that consideration existed, as it promised Dagnesses monetary compensation and benefits for his labor. *See id.* The letter's terms were sufficiently specific to create a contract—they described the nature of the position that Dagnesses was to assume and the duties he was to perform; provided a detailed compensation schedule, including commissions and bonuses for achieving certain sales goals, and list of benefits; and specified that Dagnesses' position was terminable at-will with an indefinite duration. As such, the letter constituted an enforceable contract under Florida law. *See Richey*, 879 So. 2d at 666.

TMP argues only that the letter was not a binding contract because it disclaimed any intent to form a contract. The letter provided: "[Y]our employment with [TMP] is at-will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time." Doc. 126-2 at 10. This language is ambiguous; a jury could find that the parties did not disclaim an intent to form a contract altogether, but merely intended that the contract was terminable at will. As the elements of a valid contract are otherwise present, the district court erred in granting TMP summary judgment as to Dagnesses' breach of contract claim. *Murciano*, 958 So. 2d at 423. We vacate its

15

order with respect to that claim and remand for further proceedings consistent with this opinion.

## IV.    CONCLUSION

For the reasons given, we vacate the district court's order and remand for further proceedings with respect to Dagnesses' breach of contract claim, and otherwise affirm it in all respects.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**